**Clara Beth THOMAS,
Plaintiff/Respondent,**

v.

**CITY OF ST. LOUIS,
Defendant/Appellant.**

**No. 58284.**

Missouri Court of Appeals,
Eastern District,
Division One.

March 26, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 10, 1991.

Application to Transfer Denied
June 11, 1991.

James J. Wilson, Stephen J. Kovac, Julian L. Bush, St. Louis, for defendant/appellant.

Theodore H. Hoffman, Jennifer J. Heidbreder, St. Louis, for plaintiff/respondent.

GRIMM, Judge.

In this jury-tried case, defendant City of St. Louis appeals from the judgment entered in favor of plaintiff Clara Beth Thomas for injuries she suffered when she fell while working in the Circuit Clerk's office. City contends it was not responsible for her injuries, because "the circuit court had exclusive control of the court's quarters where plaintiff fell." Further, City contends it did not retain "control of the premises such that the City might enter the premises to make repairs and alterations on the City's own initiative and responsibility, without the consent of the circuit court."

We disagree. The circuit clerk had requested City to make the repairs. Further, City had a statutory obligation to provide "suitable quarters," which includes the obligation to repair those quarters. Implicit in this duty is City's right to enter the premises to make those repairs. We affirm.

## I. Background

City owns the Civil Courts Building. This, in effect, makes the Twenty–Second Judicial Circuit Court, including the Circuit Clerk's office, a tenant. Plaintiff was employed by the Circuit Clerk.

The Civil Courts Building was built in the late 1920's. Originally, in order to supply electricity to the work areas, "electrical wires [were] running across the floors and electrical boxes sticking up in the middle of the floors...." The electrical outlets or "receptacles" were about two inches high and four inches wide.

By the time plaintiff began working in the Civil Courts Building, some of the electrical outlets in her office were no longer operable. Plaintiff had tried to place her desk over the outlets, but that was unsuccessful; that location prevented her from having electricity. Instead, plaintiff put chairs over the outlets.

While performing her regular duties, plaintiff interviewed three people in her office and then escorted them out. At some point, the chairs were moved from over the outlets. Plaintiff picked up some files and returned to her office. Someone called to plaintiff. She turned, the heel of her shoe caught in the outlet and as her ankle twisted, she heard something pop. Plaintiff sustained a fractured ankle, with nerve and tendon damage.

## II. Exclusive Control

In its only point on appeal, City contends the trial "court erred in entering judgment in favor of plaintiff ... because the circuit court had exclusive control of the court's quarters where plaintiff fell in that such control is necessary for the court to exercise its independent role under Article II, Section 1 of the Constitution of Missouri."

"Generally a building designated as the courthouse is placed at the disposal of a court, and the care for the courthouse as a building is considered an administrative, not a judicial function." 20 AM.JUR.2d *Courts* § 38 (1965). In Missouri, § 478.035, RSMo 1986 provides:

The counties and the city of St. Louis shall provide suitable quarters for the respective circuit courts, including all divisions thereof except divisions presided over by municipal judges.

City acknowledges that the "statutory obligation to provide a suitable courthouse surely imposes a duty upon the City to keep the courthouse in good repair, and that statutory duty stands in the stead of the contractual duty that other landlords might have." However, City argues that in order to impose liability on it, City must have retained such control of the premises "that the City might enter the premises to make repairs and alterations on the City's own initiative and responsibility, without the consent of the circuit court." City claims it is constitutionally prohibited from making necessary repairs because Article II, Section 1 of the Missouri Constitution mandates the separation of the judiciary from the legislative and executive branches and the court "must exercise exclusive control over its quarters."

Initially, we note that the circuit court did "consent" to the repairs, contrary to City's argument. The Circuit Clerk testified he made a "budgetary request" for the necessary funds. After the funds were allocated, the Circuit Clerk requested both orally and in writing that the hazardous outlets be removed, but they were not.

City argues it is constitutionally prohibited from making the repairs because of the separation of the branches of government. City does not, however, cite any authority in support of this argument.

A court generally must have control of the courthouse or courtroom for the performance of judicial duties. 20 AM.JUR.2d *Courts* § 39. However, judicial duties "are those duties which admit of the exercise of legal discretion [or] require the decision of questions of law...." *Yelton v. Becker*, 248 S.W.2d 86, 89 (Mo.App.E.D.1952).

Having exclusive control of a courtroom while a judicial proceeding is in progress does not necessarily conflict with City's obligation to comply with its statutory duty to provide suitable quarters for the court. Maintenance and repairs to the Civil Courts building could have been arranged so as not to interfere with the "judicial duties" of the Circuit Court or Circuit Clerk. The making of such repairs does not violate the separation of constitutional powers. City's point is denied.

The judgment of the trial court is affirmed.

PUDLOWSKI, P.J., and KAROHL, J., concur.